**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0879n.06
Filed: December 6, 2006

No. 05-1871

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| ALLAN KUEHNEMUND, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| | ) | |

**Before:  SILER, MOORE, and GILMAN, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  A federal jury convicted Allan Kuehnemund on sixteen counts related to a scheme to commit crop insurance fraud.  Kuehnemund now appeals his convictions on four of those counts, arguing that the jury lacked sufficient evidence upon which to convict him.  Additionally, he argues that the district judge improperly instructed the jury by providing an instruction based on "reckless indifference" as well as one containing the phrase "deliberate ignorance."  Because the jury had sufficient evidence upon which to convict him and because he has not shown the jury instructions to be confusing or erroneous, we **AFFIRM** the district court's judgment.

# I. FACTUAL AND PROCEDURAL BACKGROUND

A federal grand jury in the Eastern District of Michigan indicted Kuehnemund on April 14, 2004. On July 14, 2004, the government filed a superseding indictment, which alleged that Kuehnemund had made false statements to various reinsurers working on behalf of the United States Department of Agriculture's Federal Crop Insurance Corporation. More specifically, the false statements concerned the amount of potatoes Kuehnemund produced between 1994 and 1997, and were embodied in fraudulent documents including invoices, shipping orders, and billing statements. The superseding indictment alleged that inflating the records of his potato production during that period enabled Kuehnemund to make it appear that his "baseline" crop was substantial, so that his "losses" in subsequent years were greater than they actually were. Ultimately, this fraud permitted him to recover amounts from the federal crop insurance program significantly greater than the amounts to which he was entitled.

The superseding indictment charged Kuehnemund with five counts of violating the False Claims Act, 18 U.S.C. § 287; six counts of making false statements to influence the Federal Crop Insurance Corporation, in violation of 18 U.S.C. § 1014; one count of making and using false documents to support false insurance claims, in violation of 18 U.S.C. § 1001; and four counts of mail fraud, in violation of 18 U.S.C. § 1341. Each count included a citation to 18 U.S.C. § 2, which prohibits aiding and abetting an offense.

The case went to trial. After the prosecution's case closed, Kuehnemund unsuccessfully moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 as to the four mail-fraud counts (Counts 5, 7, 8, and 13) and one of the false-claim counts (Count 16). Kuehnemund put on his defense, and at the end of the trial, a jury convicted him on all counts. On June 15, 2005,

the district court sentenced Kuehnemund to concurrent sentences of 87 months for the § 1014 counts and 60 months for the remaining counts. Kuehnemund now appeals his conviction on three of the mail-fraud counts (Counts 5, 7, and 13), and on one count of making a false claim (Count 16).

## II. ANALYSIS

### A. Motion for Judgment of Acquittal

#### 1. Standard of Review

We review de novo a district court's denial of a motion for judgment of acquittal. *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004). When reviewing a sufficiency-of-the-evidence challenge to a jury's verdict, we "must uphold a jury verdict if viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Blood*, 435 F.3d 612, 618 (6th Cir. 2006) (internal quotation marks and citation omitted). In our analysis, we must "not weigh the evidence, evaluate witness credibility, or displace the jury's judgment with our own." *United States v. Wagner*, 382 F.3d 598, 610-11 (6th Cir. 2004). Further, "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Cantrell*, 278 F.3d 543, 546 (6th Cir. 2001).

#### 2. False Claim (Count 16)

The False Claims Act forbids "mak[ing] or present[ing] to any person or officer . . . of the United States, or to any department or agency thereof, any claim . . . knowing such claim to be false, fictitious, or fraudulent." 18 U.S.C. § 287. Such a false claim need not be made directly to the government; instead, criminal liability can attach when a false claim is submitted to a private party, who then submits it to the government. *United States v. Hebeka*, 89 F.3d 279, 283 (6th Cir.)

3

(submitting false Medicare claim to private insurers violates False Claims Act), *cert. denied*, 519 U.S. 999 (1996). Further, because the False Claims Act prohibits *making* a false claim, it is irrelevant whether the claim is ultimately acted upon or whether money ever changes hands.

Kuehnemund argues that the government failed to present evidence that he initiated a claim in 2003, and therefore the jury lacked sufficient evidence to convict him. Although the record contains claim forms for 2003 in Kuehnemund's name, he asserts that his insurance agent Matthew DuRussell initiated them on his own and not at Kuehnemund's direction. Kuehnemund, however, points to no testimony from either DuRussell or himself indicating that DuRussell initiated the 2003 claim form without Kuehnemund's instruction, so the core of this argument is that Kuehnemund did not sign the forms. However, as the government illustrates, many of his claim forms from other years do not contain signatures, and Kuehnemund collected on claims filed for each of those years. From this evidence, a reasonable jury could conclude that a signature was not necessary to initiate a claim and, correspondingly, that Kuehnemund intended to file the 2003 claim, notwithstanding the lack of a signature.

Additionally, Kuehnemund provided no evidence indicating that he repudiated the claim prior to the adjuster's determination that he had suffered no compensable loss for 2003. From this, a reasonable jury could conclude that Kuehnemund intended to pursue the claim. For all these reasons, Kuehnemund's conviction on Count 16 must stand.

### 3. Mail Fraud (Counts 5, 7, and 13)

Kuehnemund similarly attacks his conviction on three of the mail-fraud counts, arguing that the government failed to present sufficient evidence of his intent to use the mails to further a fraudulent scheme. This attack, like the first, falls short.

4

"Mail fraud consists of (1) a scheme or artifice to defraud; (2) use of mails in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Turner*, 465 F.3d 667, 680 (6th Cir. 2006). As Kuehnemund notes, the mail-fraud statute does not require that the defendant himself actually use the mails. *United States v. Griffith,* 17 F.3d 865, 874 (6th Cir.), *cert. denied*, 513 U.S. 850 (1994). Instead, evidence that the "use of the mails would follow in the ordinary course of business, or that a reasonable person would have foreseen [the] use of the mails," is sufficient to support a conviction. *United States v. Crossley*, 224 F.3d 847, 857 (6th Cir. 2000); *see also Pereira v. United States*, 347 U.S. 1, 8-9 (1954); *United States v. Cantrell*, 278 F.3d 543, 546 (6th Cir. 2001).

Kuehnemund's sole argument against his mail-fraud conviction is that there was insufficient evidence that he *knew* the mails would be used. In support of this argument, he points to testimony from his insurance agent indicating that the agent generally did not specify to his clients that he sent documents through the United States Postal Service.

Notwithstanding this argument, the government put on sufficient evidence for a jury to conclude that it was reasonably foreseeable that the insurance company would use the mails to transmit the documents necessary to the fraud. The government introduced testimony that Kuehnemund delivered documents that furthered the fraud to his insurance agent, who then regularly in the course of his business mailed the documents to the insurance company.

Because he was interacting with an agent of an insurance company, the jury could reasonably conclude that Kuehnemund should have foreseen the use of the mails, or that use of the mails would follow in the ordinary course of business. Other courts have noted that use of the mails by an

insurance company in response to a fraudulent claim submitted is foreseeable. *See, e.g.*, *United States v. Markum*, 4 F.3d 891, 895 n.3 (10th Cir. 1993); *United States v. Smith*, 934 F.2d 270, 273 (11th Cir. 1991) ("We agree that it is foreseeable that communications involving the policy, the details of the claim, or requests for the payment of the claim would be mailed.").[1] Since these cases were decided, our society has witnessed a proliferation of digital networks, which has made electronic transmission of documents much more common than it was in the early 1990s. Nonetheless, Kuehnemund cites no authority for his suggestion that the government must introduce evidence that a reasonable person would expect that the company would be *more likely* to mail the documents than to fax them. To the contrary, the government was required to show only that it was reasonably foreseeable that the mails would be used, and this standard falls short of the "more likely than not" standard Kuehnemund appears to advocate. For all these reasons, we reject Kuehnemund's challenge to Counts 5, 7, and 13.

## B. Challenge to Jury Instruction

Kuehnemund also objects to the district court's jury instructions, claiming that including an instruction containing the words "reckless indifference" while also giving an instruction regarding "deliberate ignorance" was sufficiently confusing to invalidate the instructions on mail fraud. This argument fails as well.

---

[1]The *Smith* court ultimately held that the use of the mails was not foreseeable in that case because it involved only the insurance company's sending an accounting copy of a claims draft from one company office to another. 934 F.2d at 272. The opinion distinguished cases involving mailings between insurance agents and their home offices, noting that such mailings are foreseeable. *Id.* at 273.

"'Trial courts have broad discretion in drafting jury instructions,' and thus we will review the instructions only for abuse of discretion." *United States v. Jamieson*, 427 F.3d 394, 414 (6th Cir. 2005) (quoting *United States v. Prince*, 214 F.3d 740, 761 (6th Cir. 2000)), *cert. denied*, 126 S. Ct. 2909 (2006). To show that the district court abused its discretion, the defendant must show that "the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Id*. (quoting *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999)).

Kuehnemund offers no indication that the "reckless indifference" instruction actually confused the jury.[2] Further, the context of the instructions reveals that the district court did not abuse its discretion. The district court first instructed the jury regarding the elements of mail fraud. In this instruction, the court noted that "[t]he term false or fraudulent pretenses, representations or promises" includes statements made "with reckless indifference as to whether" they were true or false. 5 Joint Appendix ("J.A.") at 734. This instruction applied only to the mail-fraud counts, and was consistent with the mail-fraud instruction contained in the 2005 Sixth Circuit Pattern Jury Instructions § 10.01(2)(B).[3]

Next, the district court offered a more general instruction on proving the defendant's state of mind. Here, the district court instructed, "No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that the defendant deliberately ignored a high probability that the [information] he was providing for 1994 through 1997 . . . was false, then you

---

[2]The "reckless indifference" instruction is the only one to which Kuehnemund objected at trial. *See* 5 Joint Appendix ("J.A.") at 732.

[3]In relevant part, the pattern instruction states, "The term 'false or fraudulent pretenses, representations or promises' means any false statements or assertions . . . that were . . . made with reckless indifference to their truth." 2005 Sixth Circuit Pattern Jury Instructions § 10.01(2)(B).

7

may find that he knew that the information was false." 5 J.A. at 735-36. This instruction presumably applied to all counts, not just the mail-fraud counts. Further, the instruction was consistent with 2005 Sixth Circuit Pattern Jury Instruction § 2.09(2).[4]

Because the two instructions concerned different elements (falsity and knowledge), it seems rather unlikely that they confused the jury—especially because there is no evidence of jury confusion. For these reasons, Kuehnemund has not carried his burden of showing that the instructions, viewed as a whole, were confusing, misleading, or prejudicial.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[4]The pattern instruction states, "No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that the defendant deliberately ignored a high probability that _____, then you may find that he knew _____." 2005 Sixth Circuit Pattern Jury Instruction § 2.09(2).